UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM RAY ROBERTS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-3662-B |
| | § | |
| REYNOLDS & REYNOLDS | § | |
| TRUCKING, INC., ASSURANCE | § | |
| RESOURCES, INC., and | § | |
| COMPANION LIFE INSURANCE | § | |
| CO., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Companion Life Insurance Company and Assurance Resources Inc.'s Motion to Dismiss (Doc. 12). For the following reasons, the Court **GRANTS** Defendants' Motion.

**I.**

**BACKGROUND**

This case concerns a four-party contractual relationship between Plaintiff William Roberts (Roberts), Defendant Reynolds & Reynolds Trucking, Inc. (Reynolds), and Defendants Assurance Resources, Inc. (Assurance) and Companion Life Insurance Co. (Companion) (together, the Insurance Defendants), governed by the Employee Retirement Income Security Act of 1974 (ERISA). Pub. L. No. 93-406, 88 Stat. 829 (codified in relevant part at 29 U.S.C. §§ 1001–1461). At issue is whether the Insurance Defendants may be liable for denying Roberts employee benefits.

Roberts worked for Reynolds, which provided him with employee benefits under an

Occupational Accident Benefit Plan (the Plan). Doc 1-3, Pl.'s Orig. Pet. ¶ 4.2 [hereinafter Compl.]. The Plan identifies Stacy Reynolds as the plan administrator and Assurance as the claims administrator. *Id.* ¶¶ 2.2, 4.3. Reynolds funds the plan, and has purchased an indemnity insurance policy from Companion (the Companion Policy) to recoup amounts it must pay on behalf of the Plan. Doc. 13, App. in Supp. of Defs.' Mot. to Dismiss 3 [hereinafter Defs.' App.], Duane Decl. ¶ 3; Doc. 12, Defs.' Mot. to Dismiss and Br. in Supp. ¶¶ 1, 14 [hereinafter Defs.' Mot.].

Following two work-related accidents in October 2013, Roberts began to experience severe neck and back pain. Doc. 1-3, Compl. ¶¶ 5.1–5.3. He visited several health care providers, ultimately undergoing cervical surgery on November 13, 2013. *Id.* ¶¶ 5.3–5.5. Roberts timely reported his accidents and medical visits to Stacy Reynolds, but the Reynolds office did not provide him with the correct information to file his claim with Assurance until sometime between November 7 and 21.[1] *Id.* ¶¶ 5.1, 5.3–5.6. On November 21, Roberts faxed his claim information to Assurance. *Id.* ¶ 5.6. On November 25, Assurance informed Roberts that it had denied his claim for late reporting. *Id.*

This prompted Roberts to file suit in state court alleging the following state-law claims: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of the duty of good faith and fair dealing; (4) violations of the Texas Insurance Code (TIC); (5) violations of the Texas Deceptive Trade Practices Act (DTPA); and (6) negligence. *See id.* ¶¶ 7.1–7.9. On November 13, 2015, the Insurance Defendants filed their Notice of Removal, in which they asserted that this Court has federal question jurisdiction over Roberts's state-law claims because ERISA's civil enforcement provisions completely preempt them, transforming them into federal claims. Doc. 1, Notice ¶¶ 6–7

---

[1] Originally, the Reynolds office gave Roberts the contact information of an insurance agent who did not handle claims under the Plan. Doc. 1-3, Compl. ¶¶ 5.1, 5.3–5.6.

(citing 28 U.S.C. § 1331; 29 U.S.C. § 1132(a)). On December 1, 2015, the Insurance Defendants filed their Motion to Dismiss, contending that ERISA preempted Roberts's state-law claims and that he has no direct cause of action against the Insurance Defendants. Doc. 12, Defs.' Mot. ¶¶ 7–16. Roberts responded, appearing to argue that ERISA does not preempt his state-law claims because the Plan is not an ERISA plan, and that the Insurance Defendants were responsible for processing and investigating his insurance claims, making them proper defendants. Doc. 16, Pl.'s Resp. to Defs.' Mot. to Dismiss and Br. in Supp. 5–6 [hereinafter Pl.'s Resp.]. The Insurance Defendants have replied. Doc. 18, Defs.' Reply in Supp. Mot. to Dismiss [hereinafter Defs.' Reply]. Defendants' Motion is therefore ready for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Rather, the Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are

referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility," *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014). That is, she must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 560). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

The Insurance Defendants argue that Roberts has failed to state a plausible claim upon which relief may be granted because (1) ERISA preempts Roberts's state-law claims, and he has not pleaded a cause of action under ERISA's civil enforcement provisions; and (2) Roberts has no direct cause of action against the Insurance Defendants.

"[T]here are two types of preemption under ERISA": complete and conflict. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). Complete preemption is an exception to the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004). It provides

grounds to remove a case from state court—despite the fact that the complaint does not affirmatively allege a federal claim—because Congress may so completely preempt a particular area such that "any civil complaint raising this select group of claims is necessarily federal in character." *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). Complete preemption under ERISA stems from § 502(a), codified at 29 U.S.C. 1132(a), which sets forth a comprehensive civil enforcement scheme. *Aetna Health Inc.*, 542 U.S. at 208. "[A]ny state-law cause of action that duplicates, supplements, or supplants" this scheme conflicts with the congressional intent to make ERISA an exclusive remedy, "and is therefore [completely] pre-empted." *Id.* at 209. Though the Fifth Circuit has not clearly indicated "the appropriate course of action for claims found to be completely preempted," it has outlined two possible approaches:

> District courts in this circuit are split. Most hold that a complete preemption results in dismissal of the state-law claim, even though they typically allow plaintiffs to replead and assert the dismissed state law claims as federal claims. Defendants, as well as the Second Circuit, urge this approach. But at least one of our district courts does not dismiss the claim, instead treating it as having become a properly asserted federal claim and proceeding to adjudicate it on the merits.

*Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598 n.62 (5th Cir. 2015) (citations, alterations, and internal quotation marks omitted) (collecting cases). And it appears to be leaning toward the dismissal approach. *Id.* ("[O]ur decision in *GlobeRanger* appears to provide support for the dismissal approach." (citing *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012)). In this case, the Court views the dismissal approach as the better option, so, if it concludes that Roberts's state-law claims are completely preempted, it will dismiss them but allow him to replead and assert them as federal claims.

Conflict preemption, on the other hand, does not provide grounds for removal but functions solely as an "affirmative federal defense to a state-law claim." *Westfall v. Bevan*, No. 3:08-CV-0996, 2009 WL 111577, at *4 (N.D. Tex. Jan. 15, 2009) (citing *Giles*, 172 F.3d at 337). Conflict preemption under ERISA arises under § 514(a), codified at 29 U.S.C. § 1144(a), which preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." *See* 29 U.S.C. § 1144(a) (emphasis added). In determining whether state-law claims "relate to" a plan, courts examine: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006) (citation omitted). If so, the claim must be dismissed. *See Cardona v. Life Ins. Co. of N. Am.*, No. 3:09-CV-0833, 2009 WL 3199217, at *3 (N.D. Tex. Oct. 7, 2009).

Here, the Insurance Defendants argue that ERISA completely preempts Roberts's claims, but also appear to argue for conflict preemption by citing to ERISA cases dealing with conflict preemption of state-law claims. *See* Doc. 12, Defs.' Mot. ¶¶ 7–10. The scope of complete and conflict preemption under ERISA are very similar but not exactly the same. *See Woods*, 459 F.3d at 603 ("[Though §] 502(a) may provide for preemption where § 514(a) is inapplicable, . . . . [t]he set of claims described by § 502(a) will rarely, if ever, differ from the set of claims that 'relate to' an ERISA plan under § 514(a)."). Because of their differences, and as each appears applicable, the Court will consider both types of preemption.

A. *ERISA Plan*

Before beginning its preemption analysis, the Court must first address Roberts's argument that

ERISA does not preempt his state-law claims because the Plan is not an ERISA "employee welfare benefit plan." Doc. 16, Pl.'s Resp. 5–6; *see Cardona*, 2009 WL 3199217, at *5; *Yates v. Fleetwood Transp. Servs., Inc.*, No. 07-0960, 2007 WL 3146369, at *3 (W.D. La. Oct. 26, 2007) ("The initial inquiry of course, is whether the subject plan is an ERISA plan. If not, then ERISA does not apply."). An "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). "To qualify, a plan must: (1) exist, (2) not fall within certain safe harbor provisions established by the Department of Labor, and (3) satisfy ERISA's requirements of establishment or maintenance by an employer with the intent to benefit employees." *Cardona*, 2009 WL 3199217, at *5 (citing *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007)).

Here, it is clear that the Plan exists. The parties do not dispute the point. *See* Doc. 1-3, Compl. ¶ 4.2; Doc. 12, Defs.' Mot. ¶ 1. Also, the Plan does not fall within the safe harbor provisions established by the Department of Labor because Reynolds's role was not limited to collecting premiums and remitting them to an insurer. *See House*, 499 F.3d at 449 (citing 29 C.F.R. § 2510.3-1(j)). Instead, Reynolds was the Policyholder under the Plan, designated its agent as the claims administrator, had the right to terminate the Plan, calculated Roberts's monthly premiums, paid such premiums in a timely fashion, and maintained a policy that covered whole classes of employees. *See* Doc. 1-3, Compl. ¶¶ 4.2–4.3; Doc. 13, Defs.' App. 4, 21; *see also Cardona*, 2009 WL 3199217, at *6 (holding that employer's role was not limited to collecting premiums where it engaged in similar activities, including being "listed as the subscriber on the Policy" and "submitt[ing]

beneficiary and claim documents . . . on behalf of . . . beneficiaries"). Finally, the Plan was "establish[ed] or maintain[ed] by an employer intending to benefit employees." *See House*, 499 F.3d at 448. Reynolds provided the Plan to Roberts "[a]s part of the agreement between [him] and Reynolds," the Plan provided employee benefits, and Reynolds secured the Plan for its employees and other contractors. *See* Doc. 1-3, Compl. ¶¶ 4.2–4.3; Doc. 13, Defs.' App. 4. Accordingly, the Court concludes that the Plan is an ERISA "employee welfare benefit plan."

B.   *Preemption under ERISA*

Next, the Court will address whether ERISA preempts Roberts's state-law claims: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of the duty of good faith and fair dealing; (4) violations of the TIC; (5) violations of the DTPA; and (6) negligence. Doc. 1-3, Compl. ¶¶ 7.1–7.9.

   1.   Complete Preemption

"[A]ny state-law cause of action that duplicates, supplements, or supplants" ERISA's civil enforcement provision (§ 502) is completely preempted. *See Aetna Health Inc.*, 542 U.S. at 208–09. Section 502 authorizes private suits "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a). Accordingly, "claims for breach of contract due to unpaid benefits under an ERISA plan are preempted under § 502." *Meyers v. Tex. Health Res.*, No. 3:09-CV-1402, 2009 WL 3756323, at *5 (N.D. Tex. Nov. 9, 2009); *see also Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 275 n.34 (5th Cir. 2004). Here, Roberts's breach of contract claim "seeks benefits due him under the Plan." Doc. 1-3, Compl. ¶ 7.1. Thus, ERISA completely preempts this claim.

Section 502 also authorizes private suits "for appropriate relief under section 1109," 29 U.S.C. § 1132(a)(2), which creates liability for breach of fiduciary duty. *Id.* § 1109; *see also id.* § 1104(a)(1)

("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . . with the care, skill, prudence, and diligence under the circumstances . . . that a prudent man . . . would use."). Here, Roberts alleges that "Reynolds failed and refused to provide [him] with plan information or claim forms," breaching its fiduciary duty to him. Doc. 1-3, Compl. ¶¶ 5.3, 7.8. His state-law breach of fiduciary duty claim "duplicates, supplements, or supplants" his ability to recover under § 502 and 29 U.S.C. §§ 1132(a)(2), 1109, 1104(a)(1). *See Aetna Health Inc.*, 542 U.S. at 208–09. Thus, ERISA completely preempts this claim.

### 2. Conflict Preemption

Section 514(a) preempts State laws that (1) "address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan"; and (2) "affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006) (citation omitted). Roberts's remaining claims satisfy both elements. Courts have consistently held that these specific claims are subject to conflict preemption and should be dismissed. *See Cardona*, 2009 WL 3199217, at *7–9 (collecting cases holding that ERISA preempts claims for negligence, breach of the duty of good faith and fair dealing, violations of the TIC, and violations of the DTPA). Accordingly, this Court concludes that ERISA preempts Roberts's remaining claims.

In sum, all of Roberts's state-law claims are either completely preempted or subject to conflict preemption. As such, they are **DISMISSED**; however, the Court **GRANTS** Roberts leave to amend his Complaint to replead and assert the dismissed state-law claims as federal claims. *See Spear Mktg.*, 791 F.3d at 598 n.62.

C.  *Proper Defendants to Section 502(a) Actions*

Additionally, the Insurance Defendants offer a separate basis to dismiss Roberts's claims. Specifically, they argue that they are "independent third parties with whom Roberts is not in privity and against whom Roberts has no direct cause of action" under ERISA because they are not plan sponsors or administrators. Doc. 12, Defs.' Mot. ¶ 13. In response, Roberts argues that the Insurance Defendants were responsible for evaluating claims under the Plan, so they should be subject to suit under ERISA. Doc. 16, Pl.'s Resp. 5–6.

The Fifth Circuit has ruled that ERISA allows claimants to file suit against entities that exercise actual control over the administration of an ERISA plan. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844–45 (5th Cir. 2013). Necessarily, this includes third-party claims administrators. *Id.* ("The proper party defendant in action concerning ERISA benefits is the party that controls administration of the plan . . . If an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits." (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010) (internal quotation marks and alterations omitted))). For example, in *LifeCare*, the court held that a third-party administrator—who was not the named plan administrator—could be subject to suit under ERISA because the administrator determined whether claims were routine or not, and interpreted the plan to deny the plaintiffs' benefits. *Id.* at 840, 845–46.

Here, Roberts may have a cognizable claim against Assurance because it reviewed and denied his claims. Doc. 1-3, Compl. ¶¶ 5.1–5.6. Specifically, Roberts alleges that Assurance failed to properly investigate, evaluate, and pay his claims for insurance benefits, despite the fact that he timely notified the named plan administrator of his potential claims. *Id.* ¶¶ 7.1–7.2. This is sufficient

to make Assurance a proper ERISA defendant. *See LifeCare*, 703 F.3d at 845–46.

Roberts does not, however, have a cognizable claim against Companion because he "is not a policyholder, an insured, or a beneficiary under the Companion Policy." *See* Doc. 12, Defs.' Mot. ¶ 14. He correctly argues that "Assurance was responsible for receiving, processing, and investigating claims and as such, it is subject to suit under ERISA," but incorrectly extends this argument to Companion: "By delegating these responsibilities to Assurance, Companion is also subject to suit under ERISA." Doc. 16, Pl.'s Resp. 6. Roberts alleges only that Companion is an underwriter of the Plan, Doc. 1-3, Compl. ¶ 4.3, and Reynolds only confirms that Companion is its indemnitor. Doc. 12, Defs.' Mot. ¶ 1. Nothing in the pleadings indicates Companion had the control necessary to allow Roberts to sue it under ERISA. Thus, Roberts has no direct cause of action against Companion. Therefore, in addition to dismissing Roberts's claims on preemption grounds, the Court **DISMISSES** his claims against Companion.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants Companion Life Insurance Company and Assurance Resources Inc.'s Motion to Dismiss (Doc. 12).

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears certain that such repleading would be futile. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Since this Order is the Court's first review of Roberts's allegations, the Court concludes he should be given the opportunity to replead his claims under ERISA. In doing so, Roberts should specify

which provisions of the Plan and the Companion Policy entitle him to benefits and how the Defendants breached those provisions. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12-CV-1607, 2014 WL 10212850, at *4 (N.D. Tex. July 21, 2014). Also, he should specify what bases he has for a cause of action against Companion under ERISA.

If Roberts is able to replead and overcome the grounds for dismissal stated herein, he should do so by no later than thirty (30) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds stated for dismissal in this Order. Should Roberts replead, Reynolds and the Insurance Defendants are hereby granted leave to file a response to his synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calendar days of the repleading. No further briefing will be permitted.

**SO ORDERED**.

SIGNED July 1, 2016

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE